The case of the day is United States v. Hendrix. Mr. Greenberg. Good morning, Your Honors. In this particular case, Mr. Hendrix was given a sentence that was substantially above the guideline recommendation for a guideline sentence, or perhaps a recognition by them that a below-guideline sentence may have been appropriate, and our recommendation for a sentence that was substantially below the guideline range. And that was based upon extensive mitigation. In sentencing, Mr. Hendrix, the court essentially ignored the mitigation. Sentencing is supposed to be individualized. I think that that's the sort of sea change that's come about in the last nearly two decades now since the guidelines were no longer mandatory. And yet, in this particular case, the court focused on its general perception of violence in Chicago. And I think everyone agrees that violence in Chicago is a bad thing. Gun crimes. And again, everyone agrees they're a bad thing. To the exclusion, however, of any individualized sentencing for Mr. Hendrix. The court talked about people watching television getting shot through the windows, or children getting shot, when in fact the facts that the court relied upon that it said were readily verifiable by anybody actually are not, and likely do not exist. It seems, because our research revealed that this judge is an outlier when it comes to sentencing, that he's on a singular mission to give above guideline sentences. Yet in the other cases, even with this judge, where he gave above guideline sentences to offenders, there were other aggravating circumstances. For instance, in one case . . . He talked about the defendant's own individualized criminal history, his prior conviction involving aggravated . . . Aggravated. Aggravated. Right. And so it's not like Judge Guzman didn't tie the particular facts of the conviction before him with his general concerns about general deterrence. Well, I think if you read his comments as a whole, what he said at sentencing, that he didn't really focus on Mr. Hendrix and Mr. Hendrix's criminal history. The aggravated discharge was for shooting at a vehicle. That was all the information the court had about that charge. If you look at the PSR in the case, there was no facts elicited about what had happened in that case. It wasn't offered by the government in aggravation in any way. Mr. VanBurke, in keeping with Judge Lee's observation, when you read it as a whole, and that's what you're urging . . . Yes. I think that's got to be right. When you look at the very . . . right before the sentence is announced, okay, the 84 months, what's leading up to that, immediately leading up to that, are the points that Judge Lee is just making. It looks quite individualized, okay? And I'm looking . . . do you have the transcript there? I have the quote. Yes. Okay. Like A30, A31. It's all about the kind of offense conduct, he's not on a good track, you know, he committed this prior offense, he's out while he's on parole, he's selling drugs, you know, etc. It looks pretty individualized to me. Well, except that those factors . . . none of those factors really justify the kind of upward departure that was imposed here. Because if you look at it, all of his criminal history points come from the one incident. That's a different . . . that's a slightly different argument. That's an argument that even if it was individualized, it's substantively unreasonable. Right. Right? Right. That's what you're arguing then. Right. Okay. And we're arguing both because, look, a guideline sentence is . . . and this is where I get terribly confused. A guideline sentence is presumed reasonable, but an above guideline sentence is not presumed unreasonable. So then it must be presumed reasonable. It's either reasonable or unreasonable. When you look at all of his criminal history points came from the one offense, which involved . . . it involved violence, but no one was hit. It's not like he had a murder in his background or anything like that. And what the judge . . . yes, he was going down this path, but it's a . . . there's a video. It's a small gun. It was in the center council. It's not like he was displaying it or brandishing it or going to use it. And he's selling dime bags of cannabis, which I think is hardly . . . I know it's illegal under federal law and under state law for someone to be selling it, but it's not like he's out there pushing heroin laced with fentanyl or something like that. It's the most benign possessory gun offense I have ever seen in the federal courts. I see cases where people have . . . It's not a possessory drug offense. It's a distribution drug offense. Gun offense. Possessory gun offense that I've seen. That's what I'm referring to, Your Honor. The distribution of drugs, yes, and it's illegal, and I get that, but he was not convicted of that. It's a factor. It's a factor to play in, but when you read the transcript as a whole and the judge's sentencing comments, it's clear that it is the violence on the streets that he is focused on. He doesn't talk about Mr. Hendrick . . . But doesn't he tie it to the particular facts of the conviction? So he's worried about people shooting guns on the street, and here is a defendant out in the middle of the street with a gun selling drugs from his car. It seems to me that Judge Guzman does at least tie the circumstances of the particular crime with the concerns he has about the types of crime that's out there generally. But he cites things that are just from left field. He talks about the majority of people shot are innocent victims, and the expressway violence and so forth. This is someone, if you watch the video, he's literally sitting in a car, and for a few seconds he shows his gun to someone who's sitting in the car with him and then puts the gun away again. There's no suggestion that he was going to use the gun. There's no suggestion that there was any threat of violence from this incident. It's seen on a pod camera. He's parked. I don't know why he's selling cannabis. Parked under a pod camera. It doesn't seem like the smartest thing. But he's parked under a pod camera. There's no real aggravation. In other words, even if you don't like gun violence and you think you need to attack the problem of gun violence, the degree of variance in this case, and this case, it might be in this case in particular, do not call out for making that. When the judge is talking about how he has to stop from people getting shot while they're watching television, in our reply group we looked at all the statistics that were available that we could locate, and these things that he's citing just aren't there. It's just his general perception. I think what shows that this is sort of a rogue kind of sentencing procedure is that he appears to be the only one who is having these kinds of variances on these cases, on these particular cases. I would like to reserve the rest of my time. Thank you. Certainly, Mr. Greenberg. Ms. Vermillion. Yes. Good morning, Your Honor. Good morning, Your Honors. May it please the court, I represent the United States. This court should affirm Mr. Hendricks' sentence, which is both procedurally and substantively sound. First, the district court gave a more than sufficient explanation for the defendant's sentence, including a detailed description of the 3553A factors that formed the basis of the sentence, and as the court just noted, that included the defendant's violent criminal history, including with firearms, the previous conviction for aggravated discharge of a weapon. The fact that less than a year after serving that sentence, while he was out on parole, the defendant was arrested in this case when he was on the street selling drugs with a gun in his hand. The district court found this demonstrated a troubling lack of respect for the law and a tendency toward recidivism. And the district court also stressed the seriousness of the defendant's offense. Both at sentencing and here in this court, the defendant has pressed the argument that his possession of the illegal firearm was somehow benign or innocent. The district court rejected that contention, as it was entitled to do. The district court said there's nothing innocent about selling drugs on the streets of the city of Chicago. There's nothing benign about this possession. It's the selling of drugs in conjunction with the illegal possession that leads to violence, and that's precisely why Congress chose to criminalize the possession of a weapon by a convicted felon. And indeed, the defendant here received a sentencing enhancement for possessing the firearm in connection with narcotics trafficking, which he did not dispute. District court focused on the need for specific and general deterrence of this defendant, given his history with firearms and his lack of respect for the law and the seriousness of the offense. The district court properly situated the defendant's offense in the context of the ongoing violence in Chicago, as Judge Lee noted, tying the gun violence epidemic to the specific particularized characteristics of this defendant, his history with firearms, and his specific offense. The district court considered the defendant's arguments in mitigation, and the district court arrived at a sentence that was substantively reasonable, given all the factors that I've just enumerated. If there are no questions, I would ask that the district court sentence be affirmed in this case. Thank you. Seeing none, thank you, counsel. Anything further, Mr. Greenberg? Yes. The sentence here, the government talks about gun violence in Chicago, and part of the problem is that the facts about gun violence in Chicago that the court cited were just incorrect. So it thinks it's remedying a problem. But don't you think in substance, in substance that what Judge Guzman was saying was gun violence in Chicago today is a major problem and a major challenge? Yes.  And I, in sentencing Mr. Hendricks, believe that that needs to be accounted for, both at the levels of specific and general deterrence. In other words, it wasn't some precise statistic that was driving the sentence. It was the broader observation. His own understanding of the particulars may not be empiric, may not line up with, you know, the most recent empirical measures. Right. But the broader point is clearly correct. And I don't think there's a problem with imposing a sentence with a focus in some amount on specific and general deterrence. The problem is that that became, and with this particular judge, that is the sole focus of the sentencing, to the exclusion of the individualized characteristics. So that's a different argument. That's an argument where you're saying that in your judgment when you look at the transcript it is overwhelmed by considerations of general deterrence. And that doesn't align with what 3553A requires. I couldn't have said it better. That's the position. Yes. Yes. Thank you. Have a nice holiday everybody. Thank you. Thank you, counsel. And we appreciate your willingness to accept the appointment. The case is taken under advisement.